## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| CHRISTOPHER A. WILHITE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 18-cv-1251-JES |
| | ) | |
| STEVE KALLIS, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER AND OPINION

Now before the Court is Petitioner Christopher A. Wilhite's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 1).[1] Petitioner alleges his prison disciplinary hearing, which resulted in good conduct time credits being revoked, did not comply with due process. For the reasons set forth below, Petitioner's § 2241 Petition is DENIED.

### BACKGROUND

Wilhite is currently incarcerated at the Federal Correctional Institution in Pekin, Illinois, where he is serving a sentence of 120 months' imprisonment imposed by the United States District Court for the Northern District of Indiana. *See United States v. Wilhite,* Case No. 3:13-cr-18-001 (N.D. Ind.). His current projected release date is March 10, 2022, via Good Conduct Time release.

On November 25, 2015, Correctional Officer T. Brandmeyer conducted a routine search of prison cell #223, which Wilhite shared with another prisoner, Inmate Ronny Myers. *See* Resp. App. at 19 (Doc. 8). During this routine cell search, Officer Brandmeyer saw "a glint of metal shining from the windowsill." *Id.* Upon further inspection, he "found two pieces of metal

---

[1] Citations to documents filed in this case are styled as "Doc. __."

buried in the window sill that were approximately five and a half inches in length and one end of each of them was sharpened to a point." *Id.* Officer Brandmeyer removed the metal pieces and completed an incident report documenting the incident and charging Wilhite with a violation of Prohibited Act Code 104: Possession of a Weapon/Sharpened Instrument. *Id.*; s*ee also* 28 C.F.R. § 541.3. The metal pieces were also photographed. Resp. App. at 23 (Doc. 8-1).

Lieutenant N. Fisher delivered the report to Wilhite that same day. Resp. App. at 19 (Doc. 8). In the initial investigation report of the incident, documented in a written report by Lieutenant Fisher, did not indicate that Wilhite asked for any witnesses or additional documentary evidence be collected. *Id.* at 20. Instead, he is recorded as just making two statements: (1) "I don't know anything about them," and (2) "It's not mine." *Id.* at 19-20. The Unit Discipline Committee then referred the charge to the discipline hearing officer for further hearing. *Id.* at 19.

On November 29, 2015, Wilhite was given a notice of his hearing before the discipline hearing officer. Resp. App. at 22 (Doc. 8-1). At that time, Wilhite requested Officer Brandmeyer as a witness, stating that Officer Brandmeyer would say the weapons did not belong to him. *Id.* He did not request a staff representative. *Id.*

Wilhite also alleges in his Petition that he requested staff review the CCTV video footage for a week back during certain times that his cell was unoccupied and that a fingerprint analysis be done. Pet. at 2 (Doc. 1). He alleges Lieutenant Fisher simply told him "good luck" in response to his video footage request and that his fingerprint analysis request was denied because the "officer's fingerprints are all over the weapons." *Id.* In an affidavit of Lieutenant Fisher included in Respondent's response, she alleges that these requests were not made because she

does not remember them being made and would have documented them if they had been made. Resp. App. at 67-68 (Doc. 8-3).

On December 3, 2015, a hearing was held.  Resp. App. at 16 (Doc. 1).  Wilhite gave a brief statement, saying that he had lived in the cell for a year and a half except for two months when it was closed for remodeling.  *Id.*  He said that he had "no knowledge of the knives" and had "never looked at the windowsill."  *Id.*  He stated that he didn't "have any trouble with anybody."  *Id.*  He requested that Officer Brandmeyer be called as a witness, stating that Officer Brandmeyer had told him that he did not think the weapons belonged to him or his cellmate since they did not typically cause trouble.  *Id.*; *see also* Affidavits of Christopher Wilhite and Ronny Myers, Resp. App. at 34-35 (Doc. 8-1).  His request was denied.

As documented in his report, the discipline hearing officer found him guilty based on the incident report and photograph of the weapons taken by Officer Brandmeyer.  *Id.* at 17-18.  The discipline hearing officer also considered Wilhite's statements.  *Id.*  He found that there was no evidence of a setup because the weapons had been found during the course of Officer Brandmeyer's normal duties (no other inmate had instructed him to search Wilhite's cell), and, in a setup, only one piece of metal, not two would have been required.  *Id.* at 18.  Additionally, as Wilhite had been in the cell for approximately a year and a half, both he and correctional staff had a significant amount of time to locate the weapons had they been placed in the cell prior to Wilhite's residence.  *Id.*  The officer noted that it was Wilhite's responsibility to keep his cell free of contraband.  *Id.*  As a sanction, Wilhite was disallowed 41 days of good conduct time, received 20 days of disciplinary segregation; and lost 90 days of email, commissary and visiting privileges.  *Id.* at 18, 24.  Wilhite was provided with a copy of the discipline hearing officer report.

The parties agree that Wilhite has exhausted his administrative remedies. After the hearing, he submitted an appeal (BP-10) of the discipline hearing officers guilty finding to the Bureau of Prison's North Central Regional Office, which was received on January 8, 2016. Resp. App. at 36-57 (Doc. 8-1, 8-2). His appeal was denied on March 8, 2016. *Id.* at 58-61. Wilhite then appealed to the Bureau of Prison's Central Office; that appeal was received on April 8, 2016, and denied on February 15, 2017. *Id.* at 25-35.

Wilhite filed this petition pursuant to 28 U.S.C. § 2241 on July 11, 2018. He alleges that he is innocent of the violation of Prohibited Act Code 104: Possession of a Weapon/Sharpened Instrument and that his due process rights were violated during the investigation and hearing. Respondent filed a response on August 31, 2018, (Doc. 7), arguing the petition is meritless. Wilhite filed a reply on September 20, 2018, (Doc. 9). This order follows.

## DISCUSSION

A petition seeking habeas corpus relief is appropriate under 28 U.S.C. § 2241 when a petitioner is challenging the fact or duration of his confinement. *Preiser v. Rodriguez,* 411 U.S. 475, 490, 93 S.Ct. 1827 (1973); *Waletzki v. Keohane,* 13 F.3d 1079, 1080 (7th Cir. 1994). A challenge to the denial of good conduct time is properly brought in a § 2241 petition. *Waletzki v. Keohane*, 13 F.3d 1079, 1081 (7th Cir. 1994).

Federal prisoners have a statutory right to good conduct time and the loss of such credits affects a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S. Ct. 2963, 2976 (1974); *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill,* 472 U.S. 445, 448, 105 S. Ct. 2768, 2770 (1985); *see also Jones v. Cross,* 637 F.3d 841, 845 (7th Cir. 2011). Wilhite asserts in his reply that, because he was accused of violating a federal law, he is entitled to same due process protections as he

would be afforded in a criminal proceeding. However, the Supreme Court has consistently held otherwise. Rather, due process requires that prison administrators cannot revoke good time credits without "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Hill*, 472 U.S. at 454 (*citing Wolff,* 418 U.S. at 563-67). Further, the findings must be "supported by some evidence in the record." *Id.*

Here, Wilhite argues that he is "actually innocent" of the violation. Further, he argues that he was denied due process during his discipline hearing when he was not allowed to call Officer Brandmeyer as a witness, his requested video footage was not reviewed, and the metal objects were not fingerprinted. He also alleges he has been denied due process because proper procedures were not followed and because he has not been allowed to review the Special Investigator Supervisor's Manual to determine whether proper investigative procedures were followed. The Court finds these arguments without merit, and, thus, must deny his Petition.

**A. There was Sufficient Evidence in the Record to Find Petitioner Guilty.**

Courts review prison discipline hearing officer proceedings under the "some evidence" standard. *Hill*, 472 U.S. at 457. "This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced." *Id.* (internal quotations omitted). An examination of the entire record is not required, nor should the court independently weight the evidence or attempt to determine the credibility of witnesses. *Id.* Instead, the Court needs only to determine if "there is any evidence in the record that could support" the decision, such that "the record is not so devoid of evidence that the findings of the disciplinary board were

without support or otherwise arbitrary." *Id.* Only a modicum of evidence is needed under this lenient standard. *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000), *cert. denied*, 531 U.S. 999 (2000).

Wilhite was found guilty of violating Prohibited Act Code 104: Possession of a Weapon/Sharpened Instrument. When contraband has been found in a prisoner's cell, the Seventh Circuit has held that even in a four-person cell there is "some evidence" to find all four guilty since there is at least a 25 percent probability of guilt. *See Hamilton v. O'Leary,* 976 F.2d 341, 345 (7th Cir. 1992) (upholding finding of guilt for four inmates under the "some evidence" standard when six weapons were found in a four-person cell); *see also Quintanilla v. O'Brien*, 127 F. App'x 887, 889 (7th Cir. 2005) ("Absent evidence that other prisoners had entered his cell—and Quintanilla provided none—it would be unreasonable to ascribe an equal probability of guilt to the entire prison population."); *but see Austin v. Pazera*, 779 F.3d 437, 439 (7th Cir. 2015) (the "some evidence" standard was not met where tobacco was found in a crawl space that inmate had only worked in for one day, four other inmates had had access to the crawl space and were neither questioned nor punished for the violation, and there was not any evidence that the contraband was in the crawl space the day the inmate worked there). In *Hamilton*, all four inmates were housed in the same cell, and the Seventh Circuit found "it was beyond unlikely that any of them did not know about the weapons or have access to them to use if the occasion required." *Austin*, 779 F.3d at 439 (7th Cir. 2015) (*citing Hamilton*, 976 F.2d at 345).

Petitioner asserts that the discipline hearing officer's only evidence of guilt is "[t]he existence of two sharpened pieces of metal that officer Brandmeyer claims were in the Petitioner's cell." However, this is all the evidence needed to satisfy the "some evidence" standard, as it shows at least a 50 percent probability of his guilt. Further, Wilhite shared the cell

where the contraband was located with only one other prisoner, who appears to have also been questioned and punished for the violation. Wilhite had also resided in this cell for a year and half (absent a two-month break for remodeling).  The discipline hearing officer did not find Wilhite's statement that he had never looked on the windowsill to be credible, and the Court must rely on the credibility determinations of the hearing officer.  In his reply, Wilhite alleges that there was no evidence regarding where the windowsill was located.  However, given Officer Brandmeyer's incident report stating that the weapons had been found in the windowsill, it was reasonable for the hearing officer to assume that the windowsill was accessible.  It was up to Wilhite to present any evidence that the windowsill was unreachable or not viewable by Wilhite, which he did not do at the hearing, nor has he alleged in his briefs.  Accordingly, the Court finds that the "some evidence" standard has been met.

**B.  Wilhite's Due Process Right to Call Witnesses Was Not Denied.**

Prisoners have a right to call witnesses in disciplinary hearings, but this right "is not absolute."  *Oswalt v. Godinez*, 894 F. Supp. 1181, 1187–88 (N.D. Ill. 1995) (*citing Baxter v. Palmigiano*, 425 U.S. 308, 321 (1976)).  "Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority. . . ."  *Wolff*, 418 U.S. at 566.  "[A] prisoner has no right to call a witness whose testimony would be irrelevant, repetitive, or unnecessary."  *Oliver v. Pfister*, 655 F. App'x 497, 500 (7th Cir. 2016) (*citing Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003); *Pannell v. McBride*, 306 F.3d 499, 502–03 (7th Cir. 2002); *Forbes v. Trigg*, 976 F.2d 308, 317–18 (7th Cir. 1992)).

Here, Wilhite requested Officer Brandmeyer as a witness because Officer Brandmeyer had told him and his cellmate that "he knew the shanks were not" his because he and his cellmate

do not cause trouble.  However, the hearing officer found that his testimony would merely be character evidence of little weight given the short amount of time he had worked at FCI Pekin. Resp. App. at 16 (Doc. 8).  The hearing officer further found that Officer Brandmeyer's opinion was not relevant to the facts of the case.  *Id.*  Wilhite asserts in reply that Respondent cannot state that Officer Brandmeyer was credible with his statements in the written report, but not credible as to his opinions of Wilhite's guilt.  However, that Officer Brandmeyer believed Wilhite was innocent did not make it fact.  It was reasonable to rely on the statements in the written report, which were a factual recitation of what Officer Brandmeyer found, but not opinion testimony from the same officer that was neither material nor exculpatory.  The discipline hearing officer was within his right to refuse to call a witness when he found the witness' opinion had little value.

### C.  Wilhite Was Not Denied His Due Process Right to Present Documentary Evidence.

Wilhite also had a due process right to present documentary evidence in his defense. Prison officials must "disclose all material exculpatory evidence," unless that evidence "would unduly threaten institutional concerns."  *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011) (citation and quotation marks omitted).  Evidence is exculpatory if it "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt."  *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996).  Evidence is material if disclosing it creates a "reasonable probability" of a different result.  *Toliver v. McCaughtry*, 539 F.3d 766, 780-81 (7th Cir. 2008).

Due process does not require hearing officers to consider evidence that could have been but was not presented at the hearing.  *See Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir. 2002); *McPherson v. McBride*, 188 F. 3d 784, 786 (7th Cir. 1999).  Thus, the first question in evaluating a prisoner's claim is whether a timely request was made for the evidence.  *Ashby v. Davis*, 82

Fed. App'x 467, 470 (7th Cir. 2003). A request is timely if it is made "either before or at the hearing." *Piggie v. McBride*, 277 F.3d at 925. Wilhite alleges he requested video footage be reviewed, that the metal objects be fingerprinted, and that he be allowed to review the Special Investigator Supervisor's Manual to determine whether proper investigative procedures were followed.

The record is not entirely clear as to whether or when the video footage review and/or fingerprint analysis was requested. Wilhite alleges that he requested this documentary evidence during his initial screening with Lieutenant Fisher. Pet. at 2 (Doc. 1). He alleges that Lieutenant Fisher denied his requests, stating with regard to the fingerprinting that the "officer's fingerprints are all over the weapons," and, with regard to the request for video footage, "good luck with that." Respondent states that there is no evidence in the record that he requested the video footage or fingerprinting prior to the hearing. Lieutenant Fisher also submitted an affidavit stating that had Wilhite made this request she would have documented them in the report and, further, does not remember any such requests. Wilhite's reply brief does not attempt to contradict Lieutenant Fisher's affidavit.

However, there is some evidence in the record to suggest that Wilhite may have made his video request prior to or at the hearing. In Wilhite's Regional Administrative Remedy Appeal, he alleged that he requested videos be viewed during "a two-week span from the hours of 11 a.m. to 6:30 p.m. be reviewed the hours I am at work and the cell is unoccupied" and, also, requested fingerprints be taken from the weapons. Resp. App. at 39-40 (Doc. 8-2). In response, the report did not refute that the request was made, but rather said "You told the DHO during the hearing that you asked staff for video footage but it was denied because you did not give staff enough information to preserve the video footage (i.e. the date and times). During the DHO

hearing, you did not clarify any dates or times for the video footage evidence. Therefore, the video was not considered." *Id.* at 58 (Doc. 8-3). Without further explanation, the Court is hesitant to find that this documentary evidence was not timely requested.

However, even if there was an error in not properly documenting his requests, Wilhite has not established that he was prejudiced by denial of any timely requests. *Piggie v. Cotton*, 342 F.3d at 666. "Prison officials must have the necessary discretion to keep the hearing within reasonable limits." *Wolff*, 418 U.S. at 566. With regard to video footage, the Seventh Circuit has found in some circumstances that a prisoner has a right to review video footage that may exonerate him. *Donelson v. Pfister*, 811 F.3d 911 (7th Cir. 2016); *Johnson v. Brown*, 681 F. App'x 494, 497 (7th Cir. 2017). However, prison authorities are not compelled to accept requests "that threaten institutional goals or are irrelevant, repetitive, or unnecessary." *Piggie v. Cotton,* 342 F.3d at 666; see *Jones v. Cross,* 637 F.3d 841, 847 (7th Cir. 2011). In both *Donelson* and *Johnson*, the underlying conduct at issue was a physical altercation, and the relating video footage was for specific dates and times at which the altercation occurred. Here, by contrast, Wilhite was seeking video footage be reviewed that covered either a one-week period (as alleged in the petition) or a two-week period (as alleged in his administrative appeals) and argues that the evidence *might* have shown someone come into his cell. This request would have required prison staff to review hours upon hours of video in the hopes of finding something exculpatory. Other than his unsupported statement that someone may have planted the objects, he gives no indication of why a review of a one or two-week period would be likely to find exculpatory evidence, especially in light of his statement that he had not looked in his window sill at any time during his over one and half year residence in the cell. Due process does not entitle a prisoner to a highly burdensome and time-consuming review of video evidence without

any indication that exculpatory evidence will be found.  Accordingly, the Court finds that no due process violation has occurred, even assuming a timely request was made for review of the video footage.

With regard to the fingerprint analysis of the metal objects, this request was for evidence that did not already exist.  There is no due process right to have prison officials create evidence that does not exist.  *See Manley v. Butts*, 699 Fed. App'x 574, 576 (7th Cir. 2017); *Sanchez v. Warden*, No. 3:17-CV-840-JD-MGG, 2018 WL 4335157, at *3 (N.D. Ind. Sept. 11, 2018) (holding prisoner had no right to fingerprint analysis due to prison officials "necessary discretion to keep the hearing within reasonable limits") (*quoting Wolff,* 418 U.S. at 566); *Fisher v. Superintendent*, No. 3:12-CV-183 JD, 2013 WL 351197, at *6 (N.D. Ind. Jan. 28, 2013); *Hamilton v. Scott*, 762 F. Supp. 794, 802 (N.D. Ill. 1991), *aff'd sub nom. Hamilton v. O'Leary*, 976 F.2d 341 (7th Cir. 1992) (finding there was "no due process right . . . to demand" a fingerprint analysis).  Moreover, Wilhite has not shown that this evidence would have been exculpatory because even if it showed the absence of Wilhite's fingerprints or "the existence of others," it "would not have directly undercut the evidence in the Report."  *Hamilton*, 762 F. Supp. at 802.  Accordingly, the Court finds that no due process violation has occurred related to any timely request for a fingerprint analysis.

Finally, Wilhite has not alleged that he asked for the Special Investigator Supervisor's Manual prior to or at his hearing and there is nothing in the record to suggest otherwise.  Further, prison officials are within their right to deny inmates access to this manual to maintain institutional safety and security, as it would provide information about how investigations are conducted at the prisons.  Moreover, due process in a prison hearing does not require all the safeguards included in a criminal prosecution.  *Wolff*, 418 U.S. at 556 ("Prison disciplinary

proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply.").  Accordingly, there is nothing in this manual that could have been exculpatory or material to Wilhite's guilt or innocence of the violation.  For all these reasons, the Court finds there is no due process violation with the denial of his request for the Special Investigator Supervisor's Manual either.

## CONCLUSION

For the reasons set forth above, Petitioner Wilhite's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 1) is DENIED.  This matter is now CLOSED.

Signed on this 20th day of May 2019.

*s/ James E. Shadid*
James E. Shadid
United States District Judge